UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

OFF-WHITE LLC,

                    Plaintiff,

          -against-                                    No. 20-CV-7892-LTS

ANOGAR-32 et al.,

                    Defendants.
-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

          Plaintiff Off-White LLC (hereinafter "Off-White" or "Plaintiff") moves pursuant
to Local Civil Rule 55.2(b) and Federal Rule of Civil Procedure 55(b)(2) for default judgment, a
permanent injunction, statutory damages, and a post-judgment asset restraint and transfer against
the remaining and defaulted defendants in this action (the "Defaulting Defendants"[1]) upon
claims of trademark counterfeiting and trademark infringement, pursuant to 15 U.S.C. sections
1114 through 1117 and 1125.  (Docket entry no. 57.)  The Court has subject matter jurisdiction
of this action pursuant to 28 U.S.C sections 1331, 1332, 1338(a)-(b) and 15 U.S.C. sections 1051
et seq. and 1121.  The Court has personal jurisdiction over the Defaulting Defendants because
Plaintiff has alleged and proffered evidence that Defaulting Defendants target their business
activities toward New York through the operation of online storefronts, through which New

---

[1]      The Defaulting Defendants are anogar-32, aryyud0, bcse_phone_accessories,
bintanraharj_0, bortolo_domingo, budiawasali_0, chuangshou-store, danyang6,
dengxiaobin1857, dimaprayog_83, evita.eskela, fangge06302, funthink, giftsfromporto,
henryluckmorgan, huojin4, iliso07, itapar_51, janeche-87, jaset-3745, keanu._1, kelal-11,
laujohn_16, lightynight, liza.marchetti, millie-665, pr-marketing9305, rusan7376,
sg8450048-3, spencer1870, sumak-75, tommy95118, ty-2324, vacah_96, xelz88436,
xinchengxiongdi0727, yauner88, zcla63802 and zhangyong1991.

York customers can purchase the allegedly infringing products, and of sale and shipment of the

allegedly infringing products by some Defaulting Defendants to New York purchasers.  (Docket

entry no. 14 ("Complaint") Ex. C); see also, e.g., WowWee Grp. Ltd. v. Meirly, No. 18-CV-706-

AJN, 2019 WL 1375470, at *4 (S.D.N.Y. Mar. 27, 2019) (following those "courts in this district

[which have] routinely exercise[d] personal jurisdiction over defendants in analogous cases

based only on completed checkout pages" such as those collected in Exhibit C to the Complaint

in this case).  Defaulting Defendants have not formally appeared or responded to Plaintiff's

claims or the instant motion.

The Court has carefully reviewed Plaintiff's submissions and, for the following

reasons, grants in part and denies in part Plaintiff's unopposed motion for default judgment,

permanent injunction, statutory damages, and post-judgment asset restraint and transfer.


BACKGROUND

Off-White is a marketer and distributor of a "high-end line of men's and women's

apparel, as well as shoes, accessories, jewelry, and other ready-made goods."  (Complaint at iii.

& ¶¶ 7-9.)[2]  Relevant here are Plaintiff's distinctive graphic and logo-heavy designs, specifically

its marks characterized by alternating parallel diagonal lines or two intersecting dual-sided

arrows.  (Id. ¶ 8.)  Off-White is the owner and exclusive licensee of the following registered

trademarks: 5,119,602 for "OFFWHITE" for a variety of goods in Class 25 with a constructive

date of first use of January 25, 2012; 5,713,397 for "OFF-WHITE" for a variety of goods in

Class 25; 5,710,328 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 9;

---

[2]     The facts cited herein are derived from the Complaint, the well-pleaded factual
allegations of which are deemed admitted, see Fed. R. Civ. P. 8(b)(6), as well as from
uncontroverted documentary evidence filed in support of the instant motion practice.

5,572,836 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 25;

5,710,287 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 14;

5,150,712 for  for a variety of goods in Class 18 and 25; 5,710,288 for  for a variety of

goods in Class 14; 5,307,806 for  for a variety of goods in Class 18 and 25; 5,835,552 for 

for a variety of goods in Class 9; 5,387,983 for  for a variety of goods in Class 25; 5,445,222

for  for a variety of goods in Class 25; 5,800,414 for  for a variety of goods in Class 9

and 25; 5,681,805 for  for a variety of goods in Class 9; and 5,663,133 for  for a variety

of goods in Class 25 (together, the "Off-White Registrations"). (Id. ¶ 13.) Off-White has also

applied for registration of two other marks:  under U.S. Trademark Serial Application No.

88/080,002 for a variety of goods in Class 25 and  under 88/041,456 for a variety of goods in

Class 18 and Class 25 (the "Off-White Applications," and together with the Off-White

Registrations, the "Off-White Marks"). (Id. ¶ 13.) Off-White has also gained significant

common law trademark rights in the Off-White Marks through use, advertising, and promotion.

(Id. ¶ 12.) Off-White markets, advertises, and promotes its products through its website, social

media, retailer websites, other internet-based and print advertising, and word-of-mouth buzz

generated by consumers. (Id. ¶¶ 15, 17.)

   Defaulting Defendants are third-party merchants who advertise, distribute, offer,

sell, and ship their retail products via eBay.com, an online marketplace and e-commerce

platform. (Id. ¶¶ 21, 25.) Defaulting Defendants use their eBay merchant storefronts to sell and

ship products to consumers throughout the world, including the United States, broadly, and New

York specifically. (Id. ¶¶ 25-26.) Plaintiff, through counsel Epstein Drangel LLP, determined

that Defaulting Defendants were offering for sale or selling products that use, or are confusingly similar to, Off-White Marks (the "Infringing Products"). (Id. ¶¶ 30-32.) Plaintiff asserts that such behavior infringes Off-White's registered and unregistered trademarks. (Id. ¶¶ 33-34.)

Plaintiff filed its Complaint on September 24, 2020. On September 29, 2020, the Court granted Plaintiff's request for a Temporary Restraining Order (docket entry no. 20 (the "TRO")) restraining the Defaulting Defendants' storefronts' service providers, enjoining Defaulting Defendants from selling any products that infringed the Off-White Marks or were counterfeits of Off-White products, and freezing Defaulting Defendants' assets held by specified financial institutions. On October 14, 2020, Plaintiff served each Defaulting Defendant with the summons, Complaint, TRO, and all papers filed in support of Plaintiff's application for issuance of a preliminary injunction. (See docket entry no. 25 ¶ 7.) On October 30, 2020, the Court held a show cause hearing with respect to Plaintiff's application for a preliminary injunction, and subsequently entered a Preliminary Injunction Order (docket entry no. 42 (the "PI Order")) enjoining the Defaulting Defendants from infringing upon Plaintiff's rights to Off-White Marks and products throughout the pendency of this action.[3]

On March 29, 2021, Plaintiff filed an application (docket entry no. 54) for a Clerk's Certificate of Default against Defaulting Defendants and on March 30, 2021, the Clerk of the Court issued that Certificate. (Docket entry no. 56.) Plaintiff then filed the instant Motion for Default Judgment, as well as an affidavit and memorandum of law in support of the motion. (Docket entry nos. 57-59.)

---

[3]    Defendant topshopping-18 appeared at the show cause hearing and was subsequently dismissed from the case. (Docket entry no. 32.) Defendants broshopping, hasber-13, niall_malik, styleyourlife1, and jconejita19851 were also voluntarily dismissed pursuant to Rule 41(a)(1)(A)(i). (Docket entry nos. 33, 37, 47.) None of these defendants is among the Defaulting Defendants subject to this Memorandum Opinion and Order.

<u>DISCUSSION</u>

In determining whether to grant a motion for default judgment, the Court first considers three factors: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." <u>Santana v. Latino Express Restaurants, Inc.</u>, 198 F. Supp. 3d 285, 291 (S.D.N.Y 2016) (citation omitted); <u>see also</u> <u>Guggenheim Cap., LLC v. Birnbaum</u>, 722 F.3d 444, 455 (2d Cir. 2013).

Here, all three factors weigh in favor of granting default judgment. First, Defaulting Defendants' failure to respond to Plaintiff's Complaint, and failure to respond to correspondence from Plaintiff or the Court, are indicative of willful conduct. <u>See</u> <u>Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.</u>, No. 07-CV-6865-LTS-GWG, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (citation omitted) (holding that a party's non-appearance and failure to respond to a complaint or motion for default judgment indicate willful conduct). Second, because Defaulting Defendants have failed to appear or respond to this action, the Court is unaware of any meritorious defense that Defaulting Defendants could present. <u>See</u> <u>Bldg. Serv. 32BJ Pension Fund v. 1180 AOA Member LLC</u>, No. 18-CV-12226-LTS-OTW, 2020 WL 70947, at *2 (S.D.N.Y. Jan. 3, 2020). Third, Plaintiff will be prejudiced if it is denied judgment by default, as Defaulting Defendants have willfully failed to respond to the Complaint and the present motion and, without a default judgment, Plaintiff will continue to be prejudiced via lost profits, impaired reputation, brand dilution, goodwill lost, and the destruction of the inherent value of the Off-White Marks. Accordingly, issuance of a default judgment will be appropriate if "plaintiff has pleaded facts supported by evidence sufficient to establish the defendant's

liability with respect to each cause of action asserted." <u>Santana</u>, 198 F. Supp. 3d at 291.  The

Court now turns to this inquiry.

<u>Trademark Infringement</u>

       To prevail on Lanham Act claims, Plaintiffs must proffer ownership of a valid

mark and "prove that the defendant's use of the allegedly infringing mark would likely cause

confusion as to the origin or sponsorship of the defendant's goods with plaintiff's goods."

<u>Starbucks Corp. v. Wolfe's Borough Coffee, Inc.</u>, 588 F.3d 97, 114 (2d Cir. 2009).

     *Validity of Plaintiff's Marks*

       Plaintiff has proffered ownership of valid marks.  A certificate of registration with

the United States Patent and Trademark Office is <u>prima facie</u> evidence of a trademark's validity

and entitlement to protection.  <u>Lane Cap. Mgmt., Inc. v. Lane Capital Mgmt, Inc.</u>, 192 F.3d 337,

345 (2d Cir. 1999).  Plaintiff has established ownership of its registered marks by proffer of

certificates of registration for the Off-White Registrations.  (Complaint Ex. B.)  Plaintiff has also

proffered ownership of the unregistered marks for which Plaintiff has submitted trademark

applications (<u>e.g.,</u>     ) and, accepting Plaintiff's factual allegations as true, established that they

are highly distinctive and have acquired a secondary meaning.  (Complaint ¶¶ 18-19); <u>see also</u>

<u>Off-White, LLC v. Alins</u>, No. 19-CV-9593-AT, 2021 WL 4710785, at *2 (S.D.N.Y. Oct. 8,

2021) (considering the same unregistered marks as are proffered here, and explaining that they

are "protectible as distinctive and having acquired secondary meaning").

     *Likelihood of Confusion*

       Plaintiff has also proffered evidence that the Defaulting Defendants' products

offered for sale in commerce would likely cause confusion as to the origin or sponsorship of the

Defaulting Defendants' goods with Plaintiff's goods.  To assess the likelihood of confusion,

courts in this District generally analyze the factors outlined in <u>Polaroid Corp. v. Polarad Elecs.</u>

<u>Corp.</u>, 287 F.2d 492, 495 (2d Cir. 1961).  <u>See</u>, <u>e.g.</u>, <u>Lois Sportswear, U.S.A., Inc. v. Levi Strauss</u>

<u>& Co.</u>, 799 F.2d 867, 871-76 (2d Cir. 1986) (analyzing the <u>Polaroid</u> factors).  However, in cases

involving counterfeit items, a full <u>Polaroid</u> analysis is not necessary "because counterfeits, by

their very nature, cause confusion."  <u>Gucci Am., Inc. v. Duty Free Apparel, Ltd.</u>, 286 F. Supp. 2d

284, 287 (S.D.N.Y. 2003).  The Lanham Act defines a counterfeit as a "spurious mark which is

identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C.A. § 1127

(Westlaw P.L. through 117-80).

   The Court has compared Plaintiff's marks to Defaulting Defendants' allegedly

infringing marks and finds that most of the Defaulting Defendants offered for sale products

bearing spurious marks identical with, or substantially indistinguishable from, Plaintiff's

registered marks.  As to that majority of Defaulting Defendants—the "Counterfeiting

Defendants"[4]—no <u>Polaroid</u> analysis is necessary, and Plaintiff has established the elements of

trademark infringement.

   The remaining Defaulting Defendants fall into two categories.  First, Defaulting

Defendants janeche-87, millie-665, and ty-2324 have used only one of Plaintiff's unregistered

marks (  ) in their products.  (<u>See</u> Complaint Ex. C at 163, 244, 355.)  Second, Defaulting

Defendants anogar-32, iliso07, kelal-11, and lightynight (together with janeche-87, millie-665,

and ty-2324, the "Non-Counterfeiting Defendants") offered for sale products including only

---

[4]  The Counterfeiting Defendants are aryyud0, bcse_phone_accessories, bintanraharj_0, bortolo_domingo, budiawasali_0, chuangshou-store, danyang6, dengxiaobin1857, dimaprayog_83, evita.eskela, fangge06302, funthink, giftsfromporto, henryluckmorgan, huojin4, itapar_51, jaset-3745, keanu._1, laujohn_16, liza.marchetti, pr-marketing9305, rusan7376, sg8450048-3, spencer1870, sumak-75, tommy95118, vacah_96, xelz88436, xinchengxiongdi0727, yauner88, zcla63802 and zhangyong1991.

components, or partial images, of Plaintiff's registered marks.  Specifically, defendant anogar-32 offered for sale a cell phone case with the word "OFF" and a depiction of the Mona Lisa's face, and defendants iliso07, kelal-11, and lightynight offered for sale headphone containers with Off-White's typical (but not independently registered) black bar, accompanied by the word "OFF":



"OFF WHITE Arrows & Mona Lisa Phone Case iPhone 7 8 plus X XR XS MAX 11 pro"



"Air Pod Trendy Transparent case Off-White Hype Luxury Silicon wireless Bluetooth"



"NEW Transparent Off-white Nike Acrylic Case for Airpods 1 & 2"



"Off-White Hype Luxury Inspired AirPods Pro Case Headset Monalisa Clear Cover"

(Complaint Ex. C at 3, 149, 202, 219.)

To analyze whether the Non-Counterfeiting Defendants' sales of such products would likely cause confusion with Plaintiff's, the Court applies the factors set forth in <u>Polaroid</u>.

Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC, 823 F.3d 153, 160 (2d Cir. 2016).  The Polaroid factors are:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

Id. at 165 (citing Starbucks, 588 F.3d at 115).  The Court considers each factor in turn.

First, both Off-White's registered and unregistered marks are strong and worthy of protection (Complaint ¶¶ 8, 10), as those marks would have a "tendency to uniquely identify the source of the product."  Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 384 (2d Cir. 2005). This factor weighs in favor of the Plaintiff.

Second, "[i]n assessing similarity [of marks], courts look to the overall impression created by the logos and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers."  Star Indus., 412 F.3d at 386 (citation omitted).  Here, Defaulting Defendants offered for sale on a third-party website reproductions of full or partial marks of the Plaintiff, generally accompanied by text in the listing of the product describing the product as an "Off-White" product.  (Complaint Ex. C.)  This text would make it harder for a consumer to differentiate between real and infringing products.  Accordingly, the similarity of the marks weighs in favor of the Plaintiff.

"The third Polaroid factor—proximity of the products and their competitiveness with one another—looks to the nature of the products themselves and the structure of the relevant market."  JLM Couture, Inc. v. Gutman, No. 20-CV-10575-LTS-SLC, 2021 WL 827749, at *17 (S.D.N.Y. Mar. 4, 2021) (subsequent history omitted) (citing Cadbury Beverages,

Inc. v. Cott Corp., 73 F.3d 474, 480 (2d Cir. 1996)).  The degree of proximity considered is the likelihood that consumers may be confused as to Plaintiff's affiliation with the products.  Id.  In this case, the product types are comparable and the relevant market is online retail sales, resulting in an overlap of the class of consumers to whom the goods are sold.  (Complaint ¶¶ 15, 35-37.)  This proximity weighs in favor of a likelihood of confusion as to whether Plaintiff is affiliated with Defaulting Defendants' products.

   The fourth Polaroid factor, bridging the gap, considers the likelihood or perceived likelihood that the plaintiff and defendant would enter the same market.  In this case, the gap has already been bridged since the parties are competing in the same online market for apparel, accessories, and other ready-made goods with logo-heavy designs, albeit at different price points.  See Akiro LLC v. House of Cheatham, Inc., 946 F. Supp. 2d 324, 335 (S.D.N.Y. 2013) (affirming that "all aspects of the products, including price, style, intended use, target clientele, typical distribution channels, and others" should be considered).  This factor, too, weighs in favor of Plaintiff.

   Plaintiff does not proffer any evidence relevant to the fifth Polaroid factor—actual consumer confusion.  Given the Defaulting Defendants' default, the Court does not have sufficient evidence to make a finding as to this factor.

   The sixth Polaroid factor, whether the imitative mark was adopted in bad faith, "considers whether the defendant adopted its mark with the intention of capitalizing on [the] plaintiff's reputation and goodwill and [on] any confusion between his and the senior user's product."  W.W.W. Pharm. Co., Inc. v. Gillette Co., 984 F.2d 567, 575 (2d Cir. 1993) (internal quotation marks omitted).  Given Defaulting Defendants' default, this Court is required to accept Plaintiff's factual allegations as true.  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).

Accordingly, this Court accepts Plaintiff's allegation that Defaulting Defendants were intending to capitalize on Plaintiff's reputation and goodwill through consumer confusion between the products.  As such, this factor also weighs in favor of Plaintiff.  The use of Plaintiff's trademark in the captions of the goods offered for sale is corroborative of Plaintiff's allegation regarding Defaulting Defendants' intent.

The seventh factor, respective quality of the products, "is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality."  Star Indus., 412 F.3d at 389 (citation omitted).  Here, Plaintiff has not proffered evidence of the comparative quality of Defaulting Defendants' goods. Accordingly, there is insufficient evidence for this factor to weigh in favor of any party.  See id. (holding that Polaroid factor seven was "at most evenly balanced" where the record was insufficient to find "either product is markedly superior in quality" even though "Georgi's vodka was much cheaper than Bacardi's rum"); Trs. of Columbia Univ. v. Columbia/HCA Healthcare Corp., 964 F. Supp. 733, 748 (S.D.N.Y. 1997) (holding that the seventh factor was neutral where no evidence of the defendant's product's quality was presented).

Lastly, in considering the sophistication of consumers under the eighth factor, the Court "must evaluate the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods[.]"  Trs. of Columbia Univ., 964 F. Supp. at 748 (citation omitted). There is no evidence in the record as to the sophistication of consumers in this market. Thus, this factor does not weigh in favor of or against a likelihood of confusion between Plaintiff's and Defaulting Defendants' goods.

Taken together, five of the <u>Polaroid</u> factors weigh in favor of a likelihood of confusion while three factors are neutral.  Accordingly, the Court finds that consumer confusion is likely to result from the Non-Counterfeiting Defendants' use of Plaintiff's unregistered marks, and their use of partial representations of Plaintiff's name and marks.

Accordingly, Plaintiff is entitled to a default judgment, as against all the Defaulting Defendants, on its trademark infringement claims.

Permanent Injunction

Beyond succeeding on the merits—as Plaintiff has—to obtain a permanent injunction, Plaintiff must also demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  <u>eBay Inc. v. MercExchangr, L.L.C.</u>, 547 U.S. 388, 391 (2006).

In this Circuit, courts hold that irreparable harm "exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark."  <u>Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.</u>, 754 F.2d 91, 95 (2d Cir. 1985).  Here, given the likelihood of confusion between Plaintiff's and Defaulting Defendants' products, Plaintiff is unable to control the impression consumers have of its goods.  Plaintiff cannot control the reputation of its trademarks if Defaulting Defendants are permitted to continue selling the infringing products.  Accordingly, "irreparable harm exists as a result of that loss of control over the reputation and goodwill associated with Plaintiff['s] trademarks."  <u>Ideavillage Prod. Corp. v. Liuzhou Weimao Mobile Accessory Co.</u>, No. 20-CV-4997-LTS, 2021 WL 3621788, at *5 (S.D.N.Y. Aug. 16, 2021); <u>see</u> <u>also</u> <u>Int'l Council of Shopping Ctrs., Inc. v. Glob</u>

Infotech LLC, No. 18-CV-8856-AJN, 2019 WL 2004096, at *5 (S.D.N.Y. May 7, 2019) ("Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither calculable nor precisely compensable." (citation omitted)).

Next, the Court turns to whether remedies at law are adequate to compensate for this loss of trademark control.  "A court may infer from a defendant's default that it is willing to, or may[,] continue its infringement." Pearson Educ., Inc. v. Vergara, No. 09-CV-6832-JGK-KNF, 2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010), report and recommendation adopted, No 09-CV-6832-JGK-KNF (S.D.N.Y. May 12, 2011).  Here, Defaulting Defendants have defaulted.  The Court has no evidence which indicates Defaulting Defendants will cease their infringing activities on Plaintiff's trademarks without this Court's intervention.  Moreover, "monetary damages are also inadequate to compensate Plaintiff[] for the reputational harm [it] [has] suffered and may continue to suffer." Spin Master Ltd. v. 158, 463 F. Supp. 3d 348, 376 (S.D.N.Y. 2020), adhered to in part on reconsideration, No. 18-CV-1774-LJL, 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020).  Thus, the Court finds that Plaintiff has no adequate remedy at law.

The balance of equities also favors Plaintiff.  Defaulting Defendants have not identified any hardships for the Court to consider.  Indeed, "[i]t is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product." WPIX, Inc. v. ivi, Inc., 691 F.3d 275, 287 (2d Cir. 2012) (citation omitted).  Moreover, injunctive relief would only require Defaulting Defendants to do what the Lanham Act already requires of them.  Conversely, Plaintiff's goodwill, reputation, and financial success would all be harmed by continued production and sales of infringing products.

Lastly, the public interest would be served by granting injunctive relief. Enjoining Defaulting Defendants will protect consumers from being deceived or defrauded in their purchase of infringing products.  Additionally, the public interest is furthered by protecting trademarks.  Accordingly, Plaintiff is entitled to a permanent injunction prohibiting Defaulting Defendants from their unlawful infringement of the Off-White Marks.

<u>Damages</u>

Plaintiff requests an award of $75,000 per Defaulting Defendant in statutory damages pursuant to 15 U.S.C section 1117(c).

The Lanham Act allows a plaintiff to seek statutory damages for use of a counterfeit mark between $1,000 and $200,000, or if the infringement was willful, up to $2,000,000 per mark.  15 U.S.C.A. § 1117(c) (Westlaw P.L. through 117-80).  "Because the Lanham Act does not explicitly provide guidelines for courts to use in determining an appropriate award, [ ] courts often have looked for guidance to the better developed case law under the Copyright Act, 17 U.S.C. section 504(c), which permits an award of statutory damages for willful copyright infringement."  <u>Ideavillage Prod. Corp.</u>, 2021 WL 3621788, at *6 (internal quotation marks and citations omitted) (citing <u>Louis Vuitton Malletier, S.A. v. LY USA</u>, No. 06-CV-13463-AKH, 2008 WL 5637161, at *1 (S.D.N.Y. Oct. 3, 2008) and <u>All-Star Mktg. Grp., LLC v. Media Brands Co.</u>, 775 F. Supp. 2d 613, 622 (S.D.N.Y. 2011)).  Applying this framework to Lanham Act cases, courts typically consider the following factors:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

All-Star Mktg. Grp., 775 F. Supp. 2d at 622 (quoting Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., No. 03-CV-2132-GBD-KNF, 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006)).

The Counterfeiting Defendants counterfeited Plaintiff's registered marks. Accordingly, statutory damages are proper as to those Defaulting Defendants, particularly given Defaulting Defendants' willfulness and default, which makes alternative relief provided by 15 U.S.C section 1117 impossible.  See 15 U.S.C.A. § 1117.  After careful consideration of the relevant factors, the Court finds that, as to the Counterfeiting Defendants, the requested award of $75,000 in damages per infringement is warranted.  See, e.g., Coach, Inc. v. McMeins, No. 11-CV-3574-BSJ-JCF, 2012 WL 1071269, at *4 (S.D.N.Y. Mar. 9, 2012), report and recommendation adopted, No. 11-CV-3574-BSJ-JCF, 2012 WL 1080487 (S.D.N.Y. Mar. 30, 2012) (awarding $200,000 per trademark infringed for goods sold online, accounting for both compensatory and punitive damages).[5]  Therefore, the Court hereby grants Plaintiff $75,000 in statutory damages against each Counterfeiting Defendant.

As to the Non-Counterfeiting Defendants, however, section 1117(c) permits no such statutory award.  That section provides that the Court may award statutory damages "[i]n a

---

[5]    With respect to factors one, two, and six, because of Counterfeiting Defendants' default, Plaintiff has not been able to engage in discovery of Counterfeiting Defendants' expenses saved or profits reaped or the concomitant revenues lost by Plaintiff.  (See docket entry no. 59 at 10-11; docket entry no. 58 ¶¶ 24-30.)  The third factor—the value of Plaintiff's marks—also weighs in favor of increased statutory damages awards, as Plaintiff has proffered evidence of those marks' "worldwide recognition and success," as well as "consumer recognition, awareness, and goodwill" in those marks.  (Docket entry no. 59 at 11; see also Complaint ¶¶ 11-15.)  As to factor four, deterring future similar conduct "requires a substantial award."  Louis Vuitton Malletier, 2008 WL 5637161, at *2. Factor five, willfulness, also suggests a substantial award, "because an innocent party would presumably have made an effort to defend itself[.]"  Chloe v. Zarafshan, No. 06-CV-3140-RJH-MHD, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009).  Finally, as to factor seven, Counterfeiting Defendants' use of name and stylistic marks identical or substantially indistinguishable from Plaintiff's, along with their default, suggests that they are unlikely to be deterred by a small damage award.

case involving the use of a counterfeit mark (as defined in section 1116(d) of this title)[.]"  28

U.S.C. section 1117(c).  Section 1116(d) defines a counterfeit mark to mean, as relevant here, "a

counterfeit of a mark that is registered on the principal register in the United States Patent and

Trademark Office," and section 1127 defines a "counterfeit" as a "spurious mark which is

identical with, or substantially indistinguishable from, a registered mark."  28 U.S.C. §§

1116(d)(1)(B)(i), 1127.  Because, according to Plaintiff's proffers, the Non-Counterfeiting

Defendants have either infringed an unregistered trademark, or have infringed a registered

trademark but not through the use of a mark that is "identical with, or substantially

indistinguishable from, a registered mark," Plaintiff has not met its burden to show that it is

entitled to statutory damages as against those defendants, and the Court denies Plaintiff's request

for statutory damages as to those defendants.  See Victoria Cruises, Inc. v. Changjiang Cruise

Overseas Travel Co., 630 F. Supp. 2d 255, 261 (E.D.N.Y. 2008) ("Statutory damages are

available only for counterfeiting of a registered mark. . . . Since plaintiff seeks damages

sustained between 2003 and 2006, a period during which its mark was unregistered, statutory

damages are unavailable."); Momentum Luggage & Leisure Bags v. Jansport, Inc., No. 00-CV-

7909-DLC, 2001 WL 135702, at *1 (S.D.N.Y. Feb. 16, 2001) (granting motion to dismiss claim

for statutory damages arising from infringement of unregistered trademarks).

Post-Judgment Asset Restraint and Transfer

Plaintiff requests a post-judgment continuance of the pre-judgment asset restraint

and a transfer of these assets pursuant to Rule 64, Rule 65, and 15 U.S.C. section 1116(a).

Alternatively, Plaintiff requests that the Court, pursuant to C.P.L.R. section 5225, allow Plaintiff

to serve a restraining notice pursuant to C.P.L.R. section 5222.  The court denies the former and

grants the latter.

The request for relief pursuant to Rule 64, Rule 65, and 15 U.S.C. section 1116(a) runs afoul of Federal Rule of Civil Procedure 69, which requires that execution of money judgments comport with the procedure of the forum state unless the governing federal statute provides otherwise. Fed. R. Civ. P. 69(a)(1); see Off-White, 2021 WL 4710785, at *6; Allstar Mktg. Grp., LLC v. 158, No. 1:18-CV-4101-GHW, 2019 WL 3936879, at *2 (S.D.N.Y. Aug. 20, 2019); see also Tiffany (NJ) LLC v. QI Andrew, No. 10-CV-9471-KPF, 2015 WL 3701602, at *12 (S.D.N.Y. June 15, 2015) ("[T]he Court is unconvinced that a Rule 65 injunction is an appropriate vehicle for the postjudgment restraint. A plaintiff's ordinary recourse upon securing a money judgment is to look to postjudgment remedies provided by Fed. R. Civ. P. 69 and state law."). Since the Lanham Act does not provide an exception, the Court turns to the relevant New York C.P.L.R. sections 5222 and 5225.

"C.P.L.R. section 5222 permits an attorney for a judgment creditor to issue a restraining notice against a person in possession or custody of property in which the judgment debtor has an interest." Ideavillage Prod. Corp., 2021 WL 3621788, at *7 (citing N.Y. C.P.L.R. § 5222(a)). Section 5225 allows courts to require a third party to pay a judgment creditor from funds belonging to a judgment debtor "[u]pon a special proceeding commenced by the judgment creditor." N.Y. C.P.L.R. § 5225(b). This special proceeding requirement is satisfied where a judgment creditor brings a motion pursuant to Rule 69(a) against the third party. Ideavillage Prod. Corp., 2021 WL 3621788, at *7 (collecting cases). However, Plaintiff has not brought a motion against relevant third parties pursuant to N.Y. C.P.L.R. section 5225. Thus, Plaintiff's request to execute a money judgment against relevant third parties does not accord with state procedure and cannot be granted. Accordingly, Plaintiff's request is denied, without prejudice to

Plaintiff's issuance of restraining notices pursuant to N.Y. C.P.L.R. 5222 and any later applications pursuant to N.Y. C.P.L.R. 5225.

Continuation of Pre-Judgment Asset Restraint

Plaintiff requests a continuance of the pre-judgment asset restraint for a period of thirty (30) days after this Court enters default judgment.  Such relief is unnecessary, as Rule 62(a) provides that "[e]xcept as provided in Rule 62(c) and (d), execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise." Fed. R. Civ. P. 62(a) (emphasis added).  The Court recognizes the risk that judgment debtors' assets may be concealed or dissipated while Plaintiff seeks to issue restraining notices pursuant to N.Y. C.P.L.R. 5222.  Accord Spin Master, 463 F. Supp. 3d at 385; Ideavillage Prod. Corp., 2021 WL 3621788, at *8.  Accordingly, Plaintiff is hereby relieved from the 30-day stay and may execute upon the judgment immediately.

CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is granted in part and denied in part.  Plaintiff's request for a permanent injunction is granted to the following extent:

1. Defaulting Defendants, their respective officers, agents, servants, employees, successors and assigns and all persons acting in concert with or under the direction of Defaulting Defendants (regardless of whether they are located in the United States or abroad), who receive actual notice of this Order are permanently enjoined and restrained from:

A.  manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Infringing Products or any other products bearing one or more of the Off-White Marks and/or marks that are confusingly similar to, identical to and constitute a counterfeiting and/or infringement of the Off-White Marks;

B.  directly or indirectly infringing in any manner any of Plaintiff's Off-White Marks;

C.  using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Off-White Marks to identify any goods or services not authorized by Plaintiff;

D.  using any of Plaintiff's Off-White Marks or any other marks that are confusingly similar to the Off-White Marks on or in connection with Defaulting Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Infringing Products;

E.  using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defaulting Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defaulting Defendants and Defaulting Defendants' commercial activities and Plaintiff;

F.  secreting, concealing, destroying, altering, selling off, transferring or otherwise

disposing of and/or dealing with: (i) Infringing Products and/or (ii) any computer

files, data, business records, documents or any other records or evidence relating

to their User Accounts, Merchant Storefronts or Defaulting Defendants' Assets

and the manufacture, importation, exportation, advertising, marketing, promotion,

distribution, display, offering for sale and/or sale of Infringing Products;[6]

G.  effecting assignments or transfers, forming new entities or associations, or

creating and/or utilizing any other platform, User Account, Merchant Storefront

or any other means of importation, exportation, advertising, marketing,

promotion, distribution, display, offering for sale and/or sale of Infringing

Products for the purposes of circumventing or otherwise avoiding the prohibitions

set forth in this Order; and

H.  knowingly instructing, aiding or abetting any other person or business entity in

engaging in any of the activities referred to in subparagraphs 1(A) through 1(G)

above.

---

[6]    "User Accounts" refers to websites and any and all accounts with online marketplace
platforms such as eBay, held by or associated with Defaulting Defendants, their
respective officers, employees, agents, servants and all persons in active concert or
participation with any of them.  "Merchant Storefronts" refers to User Accounts through
which Defaulting Defendants, their respective officers, employees, agents, servants and
all persons in active concert or participation with any of them operate storefronts to
manufacture, import, export, advertise, market, promote, distribute, display, offer for
sale, sell and/or otherwise deal in Infringing Products, which are held by or associated
with Defaulting Defendants, their respective officers, employees, agents, servants and all
persons in active concert or participation with any of them.   "Defaulting Defendants'
Assets" refer to money, securities or other property or assets of Defaulting Defendants
(whether said assets are located in the U.S. or abroad).

2.  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defaulting

Defendants must deliver up for destruction to Plaintiff any and all Infringing Products

and any and all packaging, labels, tags, advertising and promotional materials and any

other materials in the possession, custody or control of Defaulting Defendants that

infringe Plaintiff's trademarks, copyrights or other rights in the Off-White Marks, or

bear any marks or artwork that are confusingly or substantially similar to the Off-

White Marks pursuant to 15 U.S.C. section 1118.

Plaintiffs' request for statutory damages is granted in the amount of $75,000.00

against each of defendants aryyud0, bcse_phone_accessories, bintanraharj_0, bortolo_domingo,

budiawasali_0, chuangshou-store, danyang6, dengxiaobin1857, dimaprayog_83, evita.eskela,

fangge06302, funthink, giftsfromporto, henryluckmorgan, huojin4, itapar_51, jaset-3745,

keanu._1, laujohn_16, liza.marchetti, pr-marketing9305, rusan7376, sg8450048-3, spencer1870,

sumak-75, tommy95118, vacah_96, xelz88436, xinchengxiongdi0727, yauner88, zcla63802 and

zhangyong1991, and denied as to the other remaining defendants.  Post-judgment interest shall

accrue at the legal rate from the date of the judgment pursuant to 28 U.S.C section 1961.

Plaintiff's request for an order restricting and transferring Defaulting Defendants' assets held by

third parties is denied without prejudice to use of asset restraint and judgment execution

measures in compliance with applicable state procedures.  Plaintiff is relieved from the 30-day

stay pursuant to Federal Rule of Civil Procedure 62(a).

Any failure by Defaulting Defendants to comply with the terms of this

Memorandum Opinion and Order shall be deemed contempt of Court, subjecting Defaulting

Defendants to contempt remedies to be determined by the Court, including fines and seizure of

property.  This Court shall retain jurisdiction over this matter and the parties in order to construe

and enforce this Memorandum Opinion and Order.

After thirty days from the date of this Memorandum Opinion and Order have

passed, Plaintiff is directed to prepare and file a proposed order, in a form authorized by the

Court's Finance/Cashier Department, releasing the security bond posted by Plaintiff in

connection with the TRO and PI Order.

This Memorandum Opinion and Order resolves docket entry no. 57.

The Clerk of Court is respectfully directed to enter judgment accordingly and

close the case.

SO ORDERED.

Dated: New York, New York
        March 22, 2022

     /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge